## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH     :
OF ONE (1) ALCATEL CELLULAR     :
PHONE, BLACK IN COLOR, ONE (1)    :    **MAG. NO.  20-mj-1314**
LG FLIP PHONE, ONE (1) IPHONE,     :
BLACK AND SILVER IN COLOR,     :
AND ONE (1) IPHONE, BLACK IN     :
COLOR WITH A BLUE AND PURPLE
CASE.

### AFFIDAVIT

I, Patrick M. Barry, Special Agent, Drug Enforcement Administration ("DEA"),

Philadelphia, Pennsylvania ("PA"), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       Your affiant makes this affidavit in support of an application for a search warrant

authorizing the examination of electronic devices, that is, four cellular telephones (collectively, the

"SUBJECT PHONES"), which are currently in the possession of Federal Bureau of Investigation

Newtown Square Resident Agency, and the extraction from these devices of electronically stored

information.

2.       Your affiant has been employed as a DEA Special Agent ("SA") since March 2005.

In that capacity, your affiant has received specialized training from the DEA Academy at Quantico,

Virginia, in the investigation and identification of narcotics traffickers and has participated in

numerous investigations, which have led to the arrest of numerous narcotics traffickers. Your

affiant is a federal law enforcement officer of the United States within the meaning of Federal

Rules of Criminal Procedure 41(a)(2)(C), that is, a federal agent engaged in enforcing the criminal

laws and am within the category of officers authorized by the Attorney General of the United States

to request a search warrant.

3.      As a federal law enforcement officer, your affiant has specialized training and experience in narcotics smuggling and distribution investigations, including sixteen (16) weeks of narcotics investigative training at the DEA Academy in Quantico, Virginia.  During your affiant's employment with DEA, he has participated in investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances. Your affiant has participated in numerous aspects of drug investigations, including physical and electronic surveillance, execution of search warrants, court authorized wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers.  Your affiant has debriefed defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations, including those operating internationally. Your affiant has also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers, money launderers, and drug trafficking organizations ("DTO").  Furthermore, your affiant has attended specialized training courses in the investigation of narcotics trafficking.  Through work on past investigations, training, experience, and conversations with other law enforcement personnel, your affiant has become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking derived proceeds. Your affiant is further aware of the methods employed by drug traffickers to thwart any investigation of their illegal activities.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      The devices to be searched are one (1) Alcatel phone, black in color, ("SUBJECT PHONE 1"), one (1) LG flip phone, black and silver in color ("SUBJECT PHONE 2"), one (1) IPhone, black and silver in color ("SUBJECT PHONE 3"), and one (1) IPhone, black in color with a blue and purple case ("SUBJECT PHONE 4") (collectively the "SUBJECT PHONES"), currently secured at the FBI – Newtown Square Office. The FBI acquired each of the SUBJECT PHONES

2

from the Chester Police Department after the arrest of Brandon SCOTT-HARPER. Specifically, SUBJECT PHONES 1 through 4 were seized from Brandon SCOTT-HARPER after he was arrested by the Chester Police Department on September 4, 2019.  The SUBJECT PHONES were all in HARPER'S possession when he was arrested in possession of fifteen blue zip lock baggies, each containing suspected crack cocaine, approximately 3 grams, and one zip lock bag containing approximately 6 grams of marijuana.  The SUBJECT PHONES were subsequently transferred to agents at the Federal Bureau of Investigation ("FBI") Newtown Square Resident Agency ("NSRA") Delaware County Violent Crime Task Force ("DVVCTF") on September 4, 2019.  They have been maintained in secure custody since that time.

5.      The applied-for warrant would authorize the forensic examination of the SUBJECT PHONES for the purpose of identifying electronically stored data particularly described in Attachment B.

6.      As discussed in more detail below, Brandon SCOTT-HARPER is a member of a DTO that has been the subject of an ongoing federal investigation since April 2016. During the course of the investigation, Brandon SCOTT-HARPER was arrested on two occasions, March 31, 2019 and September 4, 2019, for possession of a controlled substance with intent to distribute suspected crack cocaine and marijuana. While taking Brandon SCOTT-HARPER into custody, officers of the Chester Police Department seized the SUBJECT PHONES, which then in SCOTT-HARPER's custody. The SUBJECT PHONES were subsequently secured at the FBI Newtown Square Resident Agency.

## OVERVIEW OF THE INVESTIGATION

7.      Your affiant makes this affidavit in support of an application for a search warrant for the SUBJECT PHONES, in connection with an investigation into the drug trafficking activities of

the 3rd Bone ("3BM") DTO, as described below.

8.      The information set forth herein is based upon your affiant's personal knowledge and information provided by other law enforcement officers involved in the investigation of the drug trafficking activities of the 3BM DTO. Since this affidavit is submitted solely for the purpose of establishing probable cause to search the SUBJECT PHONES, your affiant has not included each and every fact known to him regarding the instant investigation. Your affiant has set forth only those pertinent facts he believes are necessary to establish probable cause.

9.      In April 2016, the DEA and the FBI, along with task force officers from the Chester Police Department ("CPD") Narcotics Unit, opened an investigation into the 3BM DTO, which operates on the west side of Chester, Pennsylvania, particularly in the areas surrounding the 1100 block of W. 3rd Street in Chester.

10.     From reports and information gathered from the CPD, members of 3BM are known to be involved in narcotics distribution and gang related violence throughout Chester, Pennsylvania, and the surrounding areas. Many members of the 3BM DTO have numerous arrests and convictions for firearms and narcotics violations, as well as arrests for numerous acts of violence. Investigators identified several individuals as members of the 3BM DTO, including Dwayne BUTLER, Deshaun DAVIS, Tyleel Scott HARPER and Brandon SCOTT-HARPER and others.

11.     During the course of the investigation to date, the DEA, FBI, and CPD have used confidential sources ("CS") to conduct purchases of narcotics from members and associates of the 3BM DTO. Investigators have conducted in excess of 60 controlled purchases of crack cocaine, cocaine, and heroin from members of the 3BM DTO and their associates, including controlled purchases of narcotics from BUTLER and Brandon SCOTT-HARPER.

12.     Based on controlled purchases of narcotics and intelligence gathered during the investigation, the FBI sought and obtained authorization from the United States District Court for the Eastern District of Pennsylvania to intercept wire and electronic communications over phones utilized by BUTLER to participate in drug trafficking activities.

13.     Specifically, on September 19, 2018, Senior Judge John R. Padova signed an order authorizing the interception of communications over BUTLER's phones for a period of 30 days. On October 9, 2018, Judge Wendy Beetlestone authorized the continued interception of communications over both of the numbers for an additional 30-day period.

14.     Through intercepted communications over BUTLER's phones, investigators identified DAVIS as a source of supply for crack cocaine to BUTLER. Based on intercepted communications between BUTLER and DAVIS, in addition to surveillance, investigators sought and obtained authorization to intercept wire and electronic communications over a phone utilized by DAVIS to participate in drug trafficking activities. On November 5, 2018, the Honorable Cynthia M. Rufe, United States District Court Judge for the Eastern District of Pennsylvania, signed an order authorizing the interception of wire and electronic communications over DAVIS' phone for a 30-day period. On December 4, 2018, Judge Rufe authorized interceptions over DAVIS' phone for an additional 30-day period. Subsequent intercepts over DAVIS' phone revealed DAVIS to be a leader in the 3BM DTO and a source of supply for multiple members of the 3BM DTO, including Brandon SCOTT-HARPER, as described in more detail below.

15.     For example, on November 9, 2018, at approximately 10:05 am, an outgoing call was intercepted on Deshaun DAVIS' telephone to Brandon SCOTT-HARPER.  The following is a transcript of that conversation:

> B. SCOTT-HARPER: Yo
>
> DAVIS:                Yo.

B. SCOTT-HARPER: You got one for me?

DAVIS:                Yeah.

B. SCOTTT-HARPER: Alright you ready in there?

DAVIS:                 Yeah.

B. SCOTT-HARPER:  Alright I'm about to pull up in that joint right now.

DAVIS:                Alright.

B. SCOTT-HARPER:  Alright.

Based on training, experience, and knowledge of this investigation, your affiant believes that during this call Brandon SCOTT-HARPER asked Deshaun DAVIS for "one" which your affiant believes was one ounce of crack cocaine.  DAVIS confirmed that he had the crack cocaine available and SCOTT-HARPER tells DAVIS that he is about to arrive at DAVIS' residence, "I'm about to pull up…"

16.      On November 20, 2018, Tyleel Scott-Harper, brother of Brandon SCOTT-HARPER, was arrested by the Chester Police Department in the 300 block of Norris Street, Chester, Pennsylvania pursuant to a Pennsylvania State Arrest Warrant.  During the arrest, Tyleel Scott-Harper was found in possession of a FNX .40 caliber handgun, crack cocaine, several cell phones and a police scanner.  Soon thereafter, on November 20, 2018, at approximately 11:18 am, a call was intercepted between Brandon SCOTT-HARPER and Deshaun DAVIS.  The following is a transcript of the call.

B. SCOTT-HARPER: Yo.

DAVIS:                Yo bro.

B. SCOTT-HARPER: It's all over for bro, bro.  He just got booked again.  But this this why I need you bad bro.  You hear me?

DAVIS:                Yeah.

B. SCOTT-HARPER: This this why I need you bad.  Is is he he gonna sit. You feel me?  Cause he had that case.  You feel me?

6

|  | And they and the Narcs, the Narcs said he had a warrant for his arrest.  They said something back in 2017.  You hear me? |
|---|---|
| DAVIS: | Yeah. |
| B. SCOTT-HARPER: | So that's something else.  And he then he got booked with a (UI) and some blow. |
| DAVIS: | Oh my God. |
| B. SCOTT-HARPER: | You hear me? |
| DAVIS: | So they came up the street and got him? |
| B. SCOTT-HARPER: | Yes and then, listen, and then not only that bro. You know we put our house up for the for the bail. |

Based on training, experience, and knowledge of this investigation, your affiant believes that Brandon SCOTT-HARPER is calling DAVIS to inform DAVIS that his brother, Tyleel, a fellow member of the 3BM drug trafficking organization had been arrested by the Chester Police Department. During the call, Brandon SCOTT-HARPER tells DAVIS that the police seized "blow," what your affiant knows to be a common name for cocaine. Your affiant also believes that SCOTT-HARPER is calling DAVIS so that DAVIS can help him and his family because his brother was out on bail for a prior arrest and Tyleel Scott-Harpers family utilized their residence as collateral for the bond.

17.     On November 20, 2018, at approximately 4:38 pm, an outgoing call was intercepted between Deshaun DAVIS and Brandon SCOTT-HARPER.  The following is a transcript of the call.

|  |  |
|---|---|
| B. SCOTT-HARPER: | Hello. |
| DAVIS: | Yo bro. |

7

B. SCOTT-HARPER: What's up bro?

DAVIS:                     I'm gonna be around later on tonight, you know what I

mean but what bro got caught with he got caught with the FN?

B. SCOTT-HARPER: I think so.

DAVIS:                     Alright.

Based on training, experience, and knowledge of this investigation, your affiant believes that during this call, DAVIS asked Brandon SCOTT-HARPER about the firearm that was seized from Tyleel Scott-Harper earlier that day.  During the call DAVIS asked Brandon SCOTT-HARPER "…he got caught with the FN?" and Brandon SCOTT-HARPER said "I think so."  Your affiant believes that DAVIS is trying to confirm with Brandon SCOTT-HARPER what type of gun Tyleel Scott-Harper was arrested with.  Your affiant knows, through contact with officers of the Chester Police Department and their Incident Report that the gun seized from Tyleel Scott-Harper on November 20, 2018, was in fact a firearm manufactured by FN. In other calls intercepted in the course of this investigation, DAVIS discusses having provided Tyleel Scott-Harper with firearms.

18.     On December 6, 2018, at approximately 4:04 pm, an incoming call was intercepted between Deshaun DAVIS and Brandon SCOTT-HARPER.  The following is a transcript of the call:

DAVIS:                     Yo bro?

B. SCOTT-HARPER: Yo bro, you around?

DAVIS:                      Yeah.

B. SCOTT-HARPER:  Aight I'm tryin grab a game real quick.  I got some

                                   bread for bro.

DAVIS:                     So you tryin get some soft?

B. SCOTT-HARPER: No I want the I want the hard right now.

8

DAVIS:                    Alright.

Based on training, experience, and knowledge of this investigation, your affiant believes that during this call Brandon SCOTT-HARPER is trying to purchase "a game," code for approximately 3.5 grams of drugs.  Also during this call, Brandon SCOTT-HARPER tells DAVIS "I want the hard right now;" your affiant knows that "hard" is a common street term for crack cocaine.

19.     Over the course of the investigation, investigators also gathered intelligence indicating that members of the 3BM DTO were utilizing social media applications, such as Facebook, to communicate with each other. Based on this information, investigators sought and received a search warrant authorizing the release of Facebook records for Facebook accounts associated with four (4) members of the 3BM DTO. Records received from Facebook showed that members of the 3BM DTO routinely utilized the "chat" function of Facebook to communicate with each other, often discussing police activity in the Chester area, the presence of possible rival gangs in the area, and the possession and/or sale of firearms, among other topics. Facebook accounts associated with Brandon SCOTT-HARPER are known to have participated in these conversations. Based on my training and experience, I am aware that users commonly access Facebook and other social media platforms through applications downloaded on their cellular telephones.

20.     Based on the totality of the investigation, evidence of the drug trafficking activities of the 3BM DTO was presented to a Grand Jury in the Eastern District of Pennsylvania. On October 23, 2019, a Grand Jury in the Eastern District of Pennsylvania returned a true bill charging multiple members of the 3BM DTO, including Brandon SCOTT-HARPER, with multiple federal drug trafficking offenses.

21.     On October 30, 2019, a multi-agency arrest operation was conducted during which members of the 3BM DTO, including Brandon SCOTT-HARPER were arrested pursuant to federal arrest warrants.

### PROBABLE CAUSE TO SEARACH SUBJECT PHONES 1 through 4

22.     On March 31, 2019, at approximately 4:23 am, a Chester Police Officer, Officer Jason Black, was on patrol in the City of Chester, Pennsylvania.  According to OFC Black's Incident Report (2019-14989), OFC Black observed a black male, later identified as Brandon SCOTT-HARPER, slumped over the steering wheel of his vehicle, in the 400 block of Norris Street, Chester, Pennsylvania. OFC Black approached the vehicle, which had the drivers' window partially down. OFC Black stated that he smelled burnt marijuana emanating from the drivers' area of the vehicle. OFC Black woke SCOTT-HAPRER and began speaking with him. At this time, OFC Black heard what he though was a police scanner coming from the interior of the vehicle. OFC Black removed HARPER from the vehicle and patted down SCOTT-HARPER for officer safety. OFC Black located twenty three small zip lock baggies, each containing suspected crack cocaine from HARPER'S front left pocket.  OFC Black also found a Quansheng FM Transceiver, with the Chester Police Department frequency programmed into the scanner.  Brandon SCOTT-HARPER was placed under arrest and transported to the Chester Police Department for processing.  At the police station, SCOTT-HARPER eventually informed officers that he had "something" down his pants. Chester Police Officers eventually removed an additional twelve zip lock baggies, containing suspected crack cocaine and clear plastic sandwich bag that contained suspected marijuana.  Brandon SCOTT-HARPER was charged with possession of a controlled substance and eventually received bond from the Delaware County Jail.  Your affiant knows, that drug traffickers frequently utilize police scanners to avoid law enforcement detection, especially when in possession of narcotics.

10

23.     On September 4, 2019, OFC Brad Waltman of the Chester Police Department, was on patrol in the area in Chester, Pennsylvania.  According to OFC Waltman's Incident Report (2019-43690) he stopped a blue Nissan Altima, in the 1000 block of W. 9th Street, Chester, Pennsylvania for failure to signal while making a turn. OFC Waltman made contact with the driver, Brandon SCOTT-HARPER, who was alone in the vehicle. At this time, OFC Waltman detected the smell of burnt marijuana emanating from the drivers compartment of the vehicle.  SCOTT-HARPER informed OFC Waltman that he did not have drivers' license and OFC Waltman asked him to step from the vehicle. OFC Waltman then asked SCOTT-HARPER if there were any weapons or illegal items in the vehicle and SCOTT-HARPER told OFC Waltman that there was marijuana inside. OFC Waltman located two plastic bags containing marijuana, a total of 5.5 grams, and several pills from the interior of the vehicle.  Brandon SCOTT-HARPER was placed under arrest and transported to the Chester Police Department for processing.  OFC Waltman also located two cellular telephones (one iPhone, black and silver in color (SUBJECT PHONE 3) and one iPhone, black in color with a blue and purple case (SUBJECT PHONE 4)), from the vehicle's center cup holder.  Brandon SCOTT-HARPER was then transported to the Chester Police Department for processing and officers discovered a green bag containing fifteen small blue zip lock baggies, each containing suspected crack cocaine, one LG flip phone (SUBJECT PHONE 2) and one black Alcatel phone (SUBJECT PHONE 1) from SCOTT-HARPER'S person. The suspected crack cocaine and the marijuana were both field tested and both produced a positive result for their prospective drug. Custody of SCOTT-HARPER was later transferred to the Delaware County Jail. Based on my training and experience, it is common for drug traffickers to utilize multiple cellular telephones to conduct their drug trafficking activity, as a way of compartmentalizing their activities and to attempt to evade detection by law enforcement.

24.     On October 30, 2019, a federal arrest warrant was served on Brandon SCOTT-HARPER at the Delaware County Jail and custody of SCOTT-HARPER was transferred to the Philadelphia Federal Detention Center in Philadelphia, Pennsylvania.

25.     Based on the two arrests of Brandon SCOTT-HARPER during this investigation, surveillance of HARPER, intercepted communications exhibiting SCOTT-HARPER's participation in drug trafficking activities, and SCOTT-HARPER'S participation in the 3BM Facebook group chat, your affiant believes it to be highly likely SUBJECT PHONES 1 through 4 contain evidence of SCOTT-HARPER's participation in the 3BM DTO.  Your affiant believes Brandon SCOTT-HARPER continued to traffic narcotics up until his second arrest and believes it is highly likely SUBJECT PHONES 1 through 4 were utilized by SCOTT-HARPER to further his drug trafficking activities, thus the phones likely contain evidence of Brandon SCOTT-HARPER'S illegal activities.

26.     As described above, evidence in this investigation to date establish that Brandon SCOTT-HARPER is a member of a drug trafficking organization and that SCOTT-HARPER utilized his cell phones in furtherance of these activities. Based on this information, your affiant believes that Brandon SCOTT-HARPER is a member of the 3BM DTO and that he continued to distribute crack-cocaine throughout the Chester, Pennsylvania area up until his second arrest on September 4, 2019.

27.     The SUBJECT PHONES are currently in the lawful possession of the FBI and have been in law enforcement custody since September 4, 2019. As discussed above, the SUBJECT PHONES came into the FBI's possession after Brandon SCOTT-HARPER'S second arrest during this investigation in Delaware County, Pennsylvania. In your affiant's training and experience, your affiant knows that the SUBJECT PHONES have been stored in a manner in which their contents

are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Chester Police Department and ultimately the FBI.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

29.     The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying evidence of violations of Title 21 of the United States Code.  This evidence includes, but is not limited to, electronically stored information such as names, addresses, telephone numbers, telephone directories, call logs (including dialed, received, and missed calls), photographs, images, videos, and text messages and other electronic communications (including sent, received, and deleted text messages).

30.     This application also seeks authorization to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when it was used.

31.     There is probable cause to believe that this forensic electronic evidence might be on the device because:

        a.     Data on the storage medium (internal memory, SIM card, or other removable data storage device) can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.      The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on the device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32.      *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which your affiant is applying would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33.      *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  This search is justified at any time, as the device is in possession of another law enforcement agency and the search and seizure of the device will not interfere with

any possessory rights.  Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

34.     Based upon the foregoing facts, your affiant requests that a search warrant be issued for the devices described above and in Attachment A, to include any attached removable data storage device(s), such as a SIM card and/or other removable storage device, and to search for and seize the items listed in Attachment B.

Respectfully submitted,

/s/ Patrick M. Barry
Patrick M. Barry
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this 3rd day of August, 2020.

/s/ Hon. David R. Strawbridge
Hon. David R. Strawbridge
United States Magistrate Judge